Porter, J.
The first question to be decided in this cause, is the effect of a bill of exceptions to the introduction of certain testimony, taken under the authority of a commission, directed to any justice of the peace of the state of Mississippi. The return does not shew in any other way than by the averment of the person who took the testimony, that he was a magistrate. This in, my opinion, was not sufficient, and the evidence must be rejected.
This question disposed of, it remains to consider the case on its merits. The action is instituted on the following agreement:-
Woodville, May 9, 1819.
“I promise to pay Charles M'Micken, or order, seven hundred and forty-six dollars: whenever I am advised from David Mimms, or his representatives, of South-Carolina, that he has collected, or has the promise for the payment of the same amount, by William Garrett, or Stephen Garrett, of said place, agreeable to a receipt given for that amount to one Mrs. Martha Melton, dated yesterday; and in *572 said receipt, have requested said Garrett to pay said David Mimms, it being for money I collected for David Mimms, and by him directed to be paid over to said Mrs. Melton, formerly Mrs. Wade, but now payable to C. M'Micken, allowing a reasonable time.
Signed, Charles Stewart.”
This obligation is very obscurely worded, and it is not easy to ascertain for what object the condition was inserted. The parties have not explained it, and differ very much in the meaning they attach to it. The plaintiff contends that it was the duty of the obligor to ascertain the event on which the contract became absolute: while on the other side, it is insisted that the money cannot be demanded until the condition is performed, and that as the payee seeks payment, the burthen of proof lies on him.
Cases of this kind, where the parties have expressed themselves in a loose and confused manner, offer as much difficulty as any that are presented for decision. The best and safest principle to adopt in their examination, is to endeavour to find out the meaning of the parties, and disregarding as much as possible technical rules of construction, to carry the *573 contract into effect, in the spirit and interest with which it was entered into. This indeed is the direction of the law. “We must endeavour to ascertain what was the common meaning of the parties, rather than adhere to the literal sense.” Civil Code, 270, 56.
The latitude given by the last clause of the article cited, need not however be assumed in this case; for without deviating from the fair and natural interpretation of the terms used in this agreement, enough, I think, appears to authorise us to say, that the intention of both plaintiff and defendant was, that the obligor should obtain the information wanted.
The situation of the parties to the contract, is the first circumstance which goes to support this conclusion. The obligee, for aught that appears on the record, was a stranger to Mimms, in South-Carolina, from whom the information was to be had: the obligor had been doing business, and collecting money for him: he must be presumed therefore to know him, and it cannot be presumed that M'Micken was to communicate with Mimms, or that the defendant would have wished to rely on intelligence coming through that channel. The manner in which the condition *574 is expressed, strengthens this construction; for it is not that information shall be given to the obligor, nor as soon as it shall be proved to him, or shewn to him, that such an event has taken place, but “as soon as he is advised from Mimms,” a person, as has been already stated, for whom he had collected money, and who was transacting other business in which he was concerned.
But if this interpretation still leaves the case doubtful, that doubt I think must cease when we come to consider the last words of the agreement, “that a reasonable time is to be allowed.” These expressions were useless, if the person to whom the note was payable, undertook to ascertain the fulfilment of the condition. Because it must be presumed he would lose no time in getting a knowlege of the event and communicating it; and because the maker cannot be supposed to have had any very direct interest in hastening the payment of his obligation. If we adopt the other construction, that the obligor was to enquire and learn when Mimms had collected the money, the expressions, “allowing a reasonable time,” are at once explained. It was a proper and necessary precaution on the part of the *575 obligee, for without it, his payment might have been postponed to such a period of time, as would have greatly diminished the value of the obligation.
There is scarcely any of the rules furnished us for the construction of agreements, more useful in its application, than that which teaches us, that if a clause is susceptible of two significations, it should be understood in that which will have some effect, rather than that in which it will have none. Civ. Code, 270, art. 57. If we say that the payee of the note was to procure this information, the words of the agreement just alluded to, are useless, and unintelligible; if, on the other hand, we consider the contract in the supposition, that it was the duty of the maker to ascertain the fact, they are important, and such as a prudent man would seek to have inserted. I think therefore we should adopt the latter sense, because in the former they are idle and nugatory.
The obligation is dated May 9, 1819, and suit was commenced 13th November, 1820. This was a sufficient time to enable the defendant to have ascertained whether the event was accomplished, on which his obligation *576 became absolute. I am therefore of opinion, that the judgment of the district court be affirmed with cost.
Livermore for the plaintiff, Porter and Duncan for the defendant.